[Civ. No. 3271.   Fourth Dist.   Oct. 13, 1944.]

ELDA M. SHUFF et al., Appellants, v. HAZEL M. BLAZER, Defendant and Respondent; FLORA GAYLORD MOBERLEY et al., Interveners and Respondents.

[Civ. No. 3272.   Fourth Dist.   Oct. 13, 1944.]

Estate of HIRAM E. BLAZER, Deceased. ELDA M. SHUFF et al., Appellants, v. HAZEL M. BLAZER, as Administratrix, etc., Respondent.

Fred A. Wilson for Appellants.

C. E. Crowley for Defendant and Respondent.

BARNARD, P. J.—This is a consolidated appeal from certain probate orders and from a judgment in a separate equitable action, the various matters having been heard together in the trial court.

Hazel M. Blazer is the widow of Hiram E. Blazer. They were married in June, 1937, at which time he had certain real and personal property and she had $1,500 in cash, furniture worth $1,500 and an automobile worth $500. She had been employed by a lumber company in Los Angeles and at the time of the marriage she gave up her position and moved into his home in Ontario. He traded her car in on a new car, which he took in his name, used her furniture partly in his own home and partly in houses he was renting, and she turned over to him large portions of her $1,500 and used the remainder in living expenses and expenses about the home.

Three days before they were married Mr. Blazer asked her to go with him to the office of his lawyer, saying it was upon a matter for their common interest. There she was asked to sign an antenuptial agreement which had already been prepared and which provided that each should relinquish all rights in the property owned by the other at the time of the marriage, that on the death of either that party's property should go to his or her blood relatives, and that all property acquired after marriage should be jointly owned by the parties. Mr. Blazer told her that the purpose of this instrument was to avoid trouble with his relatives, and that if she would sign the same he would amply provide for her by will. The matter had not been previously discussed and relying on this assurance Mrs. Blazer signed the agreement.

Immediately after this instrument was signed the parties went to Mr. Blazer's home. He took from his safe a typewritten will which he had executed in January, 1937, but which was signed by only one witness. He called attention to the fact that in that will he had given a lot in Ontario, on which were his home and two other houses, to certain of his relatives. In her presence, he "x'd" out this provision with his typewriter and wrote in another provision giving this property to her, putting his initials opposite the change.

On April 3, 1942, Mr. Blazer executed another will in which he gave Mrs. Blazer his automobile, certain shares of stock, some bonds and the use of the Ontario property above mentioned during her lifetime. However, this will was typewritten and there was only one witness thereto. Both of these purported wills were later produced in court, where they were declared invalid.

Mr. Blazer died on April 18, 1942, leaving as his only blood relatives two sisters and the children of a deceased sister and of two deceased brothers. On May 4, 1942, after due notice, the widow was appointed administratrix of his estate and was granted a temporary family allowance of $150 a month. A daughter of Elda M. Shuff, who is a sister of the deceased and the leading defendant, was present at the hearing as her representative and was informed of the existence of the purported antenuptial agreement. On June 12, 1942, after the return of an inventory and appraisement the widow filed a petition for a family allowance of $200 a month, attaching thereto the antenuptial agreement and alleging that her consent to the signing and making of the same had not been fairly obtained. On June 22, 1942, the widow was granted a family allowance of $200 a month, the order reciting that after receiving evidence thereon the court found "that the petitioner signed said 'Antenuptial Agreement' because the said Hiram E. Blazer promised, assured and agreed with her that if she would do so, that then he would amply and fully provide for her by his will, and that he did intend at the time, and thereafter did attempt to make such provision for the Petitioner by will but failed to complete any legal will and he having died intestate, and without having made any provision for the support or maintenance of the Petitioner, the consideration for said ' "Antenuptial Agreement" ' failed, and the Petitioner has not thereby, or otherwise, waived her right to

family allowance as prayed for by her in her said Petition.''

In November, 1942, the widow filed her first account as administratrix in which she claimed credit for temporary family allowance in the sum of $300, permanent family allowance in the sum of $1,000, all of which had been paid monthly, and for her commissions as administratrix and the statutory fees of her attorney. She also filed a petition to terminate a joint tenancy in one building and loan certificate for $500. The plaintiffs, who are most of the blood relatives of the deceased, filed objections to both of these petitions and also filed an application for relief under Code of Civil Procedure, section 473. It appears in evidence that the plaintiff Elda M. Shuff was fully informed of the existence of the purported antenuptial agreement and of its terms, by a letter dated May 15, 1942.

In November, 1942, the plaintiffs brought an equitable action against the widow asking the court to declare the rights of the parties under the prenuptial agreement, to decree that by said agreement the widow had waived all rights as an heir at law or otherwise in and to the estate of her husband, to adjudge that all of the estate left by him consisted of property owned by him at the time of the marriage, and to decree that all money and property received by the widow from said estate was received and held by her as trustee for the use and benefit of the plaintiffs. The complaint alleged the execution of the antenuptial agreement; that the widow in her petition for letters of administration had falsely and fraudulently alleged that she was an heir at law and entitled to share in the estate; that she had appeared at the hearing and falsely and fraudulently induced the court to appoint her as administratrix of the estate; that she had fraudulently induced the court to grant her a temporary family allowance; that in connection with her application for a permanent family allowance she had falsely and fraudulently testified that she had been induced to sign the antenuptial agreement by the promise and assurance of her husband that if she would sign the same he would make a will in which she would be amply provided for; that she concealed from the plaintiffs the existence of this antenuptial agreement until about the month of August, 1942; and that all of the property left by the deceased consisted of property owned by him prior to the marriage. The widow answered denying all material allegations, and alleging that a large part of the property left by the deceased was

acquired by her and her husband after their marriage and was community property, that one parcel was acquired and held by them as joint tenants, and that the invalidity of the antenuptial agreement had already been established in the probate court.

Certain heirs of Hiram E. Blazer's first wife filed a complaint in intervention in the equity action and the plaintiffs therein then answered the same and filed a cross-complaint naming these interveners and the widow as cross-defendants.

All of the above matters were heard and tried together and before a decision was rendered the widow filed a petition to set aside the home of the deceased to her as a homestead for the term of her natural life. The plaintiffs filed objections thereto and this matter was also submitted to the court upon the evidence previously taken and upon the proceedings in the probate court. The court denied relief under section 473 to the plaintiffs, overruled their objections to the account, to the joint tenancy proceeding and to the granting of a probate homestead, and in the equity action entered judgment that the plaintiffs take nothing. Findings of fact were made accordingly and the plaintiffs here appealed from the various orders and from the judgment.

Most of the points raised by the appellants, insofar as the merits are concerned, rest upon the contention that the antenuptial agreement was existing and valid, that by it the widow waived all right to share in this estate or to act as administratrix thereof, that it follows that she had no right to any statutory fees or to family allowance or to a probate homestead, and that she is therefore chargeable as an involuntary trustee and should have been compelled to return to the estate any and all amounts received by her or by her attorney. It may first be observed that in this antenuptial agreement the widow did not expressly or by any clear language waive the right to administer the estate of her husband or to receive the family allowance provided for by statute. (See *Estate of Cover*, 188 Cal. 133 [204 P. 583].) A complete answer to most of these points is also found in the fact that it was alleged, proved and found that about $4,000 of the property left by the deceased was acquired by Mr. Blazer and his wife after the execution of the antenuptial agreement. The plaintiffs were all nonresidents of this state and, irrespective of the validity of the antenuptial agreement, the widow was entitled

to letters of administration under the provisions of the Probate Code.

    Moreover, the invalidity of the antenuptial agreement was thoroughly established. Under proceedings in the probate court, held after due notice, the court held on sufficient findings that the antenuptial agreement was invalid for the reasons above mentioned and that the widow had not waived her rights under the circumstances. Those orders were never appealed from and have become final. Assuming that this holding could have been set aside in the equity case, the court arrived at the same conclusion in that action and the evidence fully supports its finding and judgment. So far as we can find in the record the plaintiffs did not even introduce any evidence which tends to contradict the testimony of the widow with respect to the circumstances surrounding the execution of the antenuptial agreement.

    The appellants contend that the court erred in holding that a certain building and loan certificate for $500 was held by Mr. and Mrs. Blazer as joint tenants. This certificate was issued in February, 1938, to H. E. Blazer and Hazel M. Blazer, as joint tenants with the right of survivorship. On its back there is an assignment dated January 2, 1940, signed by H. E. Blazer and Hazel M. Blazer. The name of the grantee was apparently H. E. Blazer, but the initials "H. E." have been erased. The certificate was found in Mr. Blazer's safe after his death and his widow testified that she knew nothing about this erasure. Mrs. Blazer had turned over a large part of her $1,500 to Mr. Blazer and he bought the stock certificate in the names of himself and wife as joint tenants with the right of survivorship. She testified that at the time this assignment was signed by both of them her husband was going to "take the certificate back and give me some money, because I was out of cash, but he did not do it." There is no evidence to the contrary other than the certificate itself and the assignment on the back thereof. While the evidence is meager it supports the finding made by the court.

    The appellants raise a number of points contending that the court failed to find upon material issues. It is first argued that the court failed to find that the antenuptial agreement was a valid agreement. While the continuing effect of this agreement, as alleged in the complaint, was denied in the answer there was no dispute over the fact that the antenuptial agreement was originally signed and delivered. The

court found that the instrument was signed on June 22, 1937, and its failure to find that the instrument was "executed," which is complained of by appellants, is immaterial under the circumstances. With respect to its validity and binding effect upon the widow at the time of the death of her husband the other findings are sufficient. ▮ It is next argued that under the pleadings it was necessary for the court to determine what portions of the estate constituted antenuptial property of the deceased and that this was not done. The complaint alleged that all of the estate of the deceased consisted of property belonging to him at the time of the marriage. This was denied. The court found that this allegation was not true and found that part of the estate was the community property of the deceased and his wife, that part of the estate, particularly an automobile and certain stocks, was purchased with funds belonging to both of the parties and that one stock certificate was purchased in joint tenancy. There was a finding upon the issue presented and no failure to find upon an issue which is material here appears.

▮ It is next argued that the court failed to make a finding on six matters, all of which relate to alleged deceptions on the part of the widow in concealing the existence of the antenuptial agreement and in misrepresenting that she was an heir, with the result that the appellants did not oppose her in the earlier stages of the probate proceedings. While the court did not make a specific finding with respect to each of the several allegations thus referred to it did find "That each and all, of the allegations of the complaint wherein it is charged that the defendant made any false or fraudulent representations, or concealments, or that she falsely testified regarding any fact, or that she or her attorney fraudulently concealed any fact that they or she was under any legal or moral obligation to disclose, is untrue and not sustained by any of the evidence submitted." Finally, it is argued that the court failed to make a finding with respect to an allegation that a controversy existed between the parties relating to the rights of the widow by reason of the antenuptial agreement and with respect to its validity. This allegation was not denied, the fact in question otherwise sufficiently appeared in the findings, and no further finding was necessary.

The court found that the widow and the deceased signed this antenuptial agreement on June 22, 1937; that this in-

strument was duly presented to the court sitting on probate on June 26, 1942, at which time it was determined by the probate court that this antenuptial agreement was without binding force upon the widow; that she had not waived her rights as widow by signing said agreement; that due notice of all proceedings in the probate court had been given and no appeals had been taken from the orders holding that the widow was not bound by the antenuptial agreement and appointing her administratrix of the estate; that no fraud or deception had been practiced; and "that the plaintiffs and interveners have failed to establish any cause in law or equity for the intervention by this court into or against any or either of the orders complained of or against the defendant."

Appellants' final contention is that they were entitled to a judgment on their cross-complaint. It is argued that although the interveners answered the cross-complaint the widow filed no answer thereto and that under the pleadings and proof the appellants were entitled to judgment that they were the owners subject to administration of that part of the estate which the evidence disclosed to have been the antenuptial property of the deceased. While the widow did not answer the cross-complaint she answered the complaint and the case was tried upon the issues thus presented. The issues were largely, if not entirely, the same and the entire controversy was presented and submitted to the court without regard to any technical defect in the pleadings. The probate court had held that the antenuptial agreement was not binding on the widow under the circumstances. Conceding that this holding could be attacked in the equity case, it was still incumbent upon the appellants to introduce sufficient evidence to support their contentions. This they failed to do and the court so found. Under the circumstances shown by the record, the appellants were not entitled to judgment on their cross-complaint. While the findings are not a model and could well have been more detailed and specific in certain respects they are sufficient to support the judgment.

The various orders and the judgment appealed from are affirmed.

Marks, J., and Griffin, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 4, 1944.